UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80050-CR-HURLEY

UNITED STATES OF AMERICA,

v.

LOUIS C. YOUNGLOVE,

Defendant.
_____/



FILED by ____ D.C.

JUN 2 3 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION

The Defendant, LOUIS C. YOUNGLOVE, appeared before the Court on June 2, 2014, for a final hearing on his alleged violations of supervised release [DE 155]. In 2008, Defendant pled guilty to, and was convicted of, manufacturing more than 100 marijuana plants, in violation of 21 U.S.C. § 841(a)(1) (count 3) [DEs 55, 64]. On October 31, 2008, the Honorable United States District Judge Daniel T.K. Hurley sentenced Defendant to 120 months in federal prison, followed by eight years of supervised release [DE 64]. Defendant's sentence was reduced on or about November 16, 2009, based upon substantial assistance [DE 89]. Defendant commenced supervised release on September 4, 2012 [DE 140].

Defendant is now charged, pursuant to a Petition for Warrant or Summons for Offender Under Supervision [DE 140], with the following supervised release violations:

1. **Violation of a Mandatory Condition**, by failing to refrain from a violation of the law. According to the Petition, on or about March 14, 2014, in Palm Beach County, Florida, Defendant committed the offense of domestic battery, contrary to Florida State Statute 784.03;

2.  **Violation of a Mandatory Condition**, by failing to refrain from a violation of the law. According to the Petition, on or about March 18, 2014 in Palm Beach County, Florida, Defendant committed the offense of simple battery, contrary to Florida State Statute 784.03;

3.  **Violation of a Mandatory Condition**, by failing to refrain from a violation of the law. According to the Petition, on or about March 18, 2014 in Palm Beach County, Florida, Defendant committed the offense of aggravated assault, contrary to Florida State Statute 784.021;

4.  **Violation of a Mandatory Condition**, by refusing to submit to drug testing. According to the Petition, on November 25, 2013, November 26, 2013, December 4, 2013, February 6, 2014, and February 7, 2014, Defendant was instructed to submit to drug testing and failed to do so; and

5.  **Violation of a Mandatory Condition**, by failing to submit to drug testing. According to the Petition, on April 2, 2014, Defendant failed to submit to drug testing as scheduled by Code-A-Phone.

## **Final Hearing**

At the June 2, 2014 final hearing,[1] the Government proceeded by live testimony and by proffer.

The Court first heard the testimony of Sylvia Beres Peterson. Ms. Peterson testified that

---

[1] Defendant's preliminary hearing on his alleged violations of supervised release was held on May 2, 2014. The parties stipulated that the evidence presented at that hearing was admitted for the purposes of Defendant's final hearing, as well. The Court is therefore relying upon the evidence submitted both at the preliminary hearing of May 2, 2014 and at the June 2, 2014 final hearing. The undersigned admitted the transcript of the May 2, 2014 preliminary hearing into evidence [DE 155]. The undersigned found at the preliminary hearing that the Government had established probable cause to believe Defendant had committed all five violations as alleged in the Petition, and entered an Order to that effect [DE 149].

she worked at Manalapan Pizza part-time as a hostess from March of 2014 until April of 2014. During the period of time Ms. Peterson worked at Manalapan Pizza, she met Defendant and identified him in the courtroom.[2]   When asked to describe the working environment at Manalapan Pizza, Ms. Peterson described it as very "chaotic" and "hostile."   Ms. Peterson testified that there was always yelling in the kitchen and that Defendant called her a "bitch" and a "fucking bitch" and that she observed Defendant call other employees "retarded," "assholes.," and "faggots."   Ms. Peterson also testified that she overheard Defendant call his longtime girlfriend, Monica Garcia, who also worked at Manalapan Pizza as a manager and waitress, a "fucking bitch."   According to Ms. Peterson, Defendant was "very disrespectful" to Ms. Garcia, and that he yelled at her and swore at her frequently.   Additionally, Ms. Peterson testified that Defendant was very controlling over Ms. Garcia's behavior and would become upset if other male employees spoke with her.   Ms. Peterson stated that Defendant's two children, ages 17 and 11, also worked at Manalapan Pizza and witnessed Defendant's behavior.

Ms. Peterson testified that, on March 17, 2014, she was working a 5:00 pm-9:00 pm shift as a hostess at Manalapan Pizza.   Ms. Peterson also said that Brauley Angel Estremera (aka "Brad") was working at the restaurant as a busboy at that time, as well.   Ms. Peterson also explained that Defendant and another employee, Willie Mora, were working in the kitchen.   Ms. Peterson also testified that another individual, Matt, was working there as a waiter at that time. Ms. Peterson testified that Brad was folding silverware and Defendant was cooking in the kitchen, when Defendant began yelling at Brad.   According to Ms. Peterson, Brad told Defendant to stop disrespecting him, and Defendant told Brad that he would disrespect him all he wanted. Ms. Peterson said that, as Brad left the kitchen area, Defendant called him a "fucking faggot,"

---

[2] At this point during the June 2, 2014 final hearing, defense counsel stipulated to identity.

and Defendant told Brad that he would call him whatever he wanted.  Ms. Peterson described Defendant's behavior as aggressive, whereas Brad remained calm.  Brad then went back to folding silverware, and Ms. Peterson went home because her shift had ended.  Ms. Peterson did not observe any physical altercation between Brad and Defendant.

Upon questioning from the Government, Ms. Peterson testified that she was friends with Ms. Garcia, and that other employees told Ms. Peterson that Defendant would beat Ms. Garcia.  Additionally, Ms. Peterson stated that she had spoken with Ms. Garcia personally about her relationship with Defendant, and Ms. Garcia admitted that Defendant has beaten her since she was pregnant with their first child[3], and that Defendant hits her as if she were a man.[4]

The Court then heard testimony from "Brad" Estremera.  Brad testified that he had worked at Manalapan Pizza as a busboy for approximately two months, from January, 2014, until March 18, 2014, and that he stopped working at Manalapan Pizza after the incident occurred with Defendant.  Brad testified that he worked at Manalapan Pizza full-time, and typically worked from 4:00 pm until 2:00 a.m. or 3:00 a.m.  Brad testified that Defendant was disrespectful and violent towards him as well as towards Ms. Garcia and the owner of the restaurant.  Brad testified that he had overheard Defendant call Ms. Garcia a "fucking dirty cunt" and also stated that Defendant called him a "fucking faggot."  Brad explained that, even though the working environment was difficult, he needed the job desperately.

Brad first offered testimony regarding the alleged domestic violence incident between

---

[3] Ms. Garcia and Defendant's oldest child is 21 years old.  Ms. Garcia and Defendant have lived together for several years and have children together, but are unmarried.

[4] At this point, defense counsel lodged a hearsay objection.  However, the Court admitted this testimony, as it had sufficient indicia of reliability.  *See United States v. Hathaway*, No. 08-80077-CR-Hurley, 2011 WL 5320985 (S.D. Fla. Oct. 18, 2011).  The Court has performed the balancing test required under *United States v. Frazier*, 26 F.3d 110 (11th Cir. 1994), and has determined that such testimony is reliable and admissible.

Defendant and Ms. Garcia.  According to Brad, on March 14, in the moments leading up to the alleged incident, he was by the door and Ms. Garcia looked worried.  Defendant was looking for Ms. Garcia, and when Defendant spotted her, Defendant took off his apron and went outside where she was located.  When Ms. Garcia saw Defendant, she tried to get away from him, and Defendant began chasing after her.  Defendant grabbed Ms. Garcia, but she managed to escape. When police arrived on the scene, they asked to speak to Defendant.  Before exiting the restaurant to speak to police, Defendant dropped a "fat bag of a white substance" on the ground. Brad suspected that this substance was cocaine.

Brad then offered testimony on the alleged incident that occurred between he and Defendant.  Brad testified that, on the evening of March 17, 2014 and in the early morning hours of March 18, 2014, Brad was working at Manalapan Pizza as a busboy.  The owner of the restaurant, Earl Bass, offered Brad a meal because his shift would not be ended early.  Brad ordered a sandwich and then began shining silverware.  When the sandwich was ready, Brad asked for his sandwich and Willie Mora tried to hand the sandwich to Brad, but Defendant ripped it out of Mr. Mora's hands and said to Brad, "shut the fuck up you faggot, get back to work."  After this occurred, Brad called the owner.  Brad then spoke with the owner's son, who was working at the restaurant at that time, and the owner's son told Defendant to give the sandwich to Brad.  In response, Defendant said that Brad was not eating and instead placed the sandwich on top of the oven.  Brad complained to Ms. Garcia, but Ms. Garcia said there was nothing she could do.  According to Brad, when Defendant found out that Brad called the owner to complain, Defendant became upset; Brad testified that while he was in an adjacent unoccupied space in the mall, Defendant approached and grabbed him and pressed a small dessert fork against his chest.  When Brad broke free from Defendant's grasp and ran away, Defendant

yelled, "get the fuck off the property."[5]  According to Brad, this incident occurred in a vacant business space next to Manalapan Pizza.  Afterwards, Brad spoke with the owner to see if he still had a job at Manalapan Pizza, and the owner told Brad that he was no longer supposed to be at the restaurant and that he was still trying to figure out what happened.  Brad then reported the incident to the police.

Additionally, Brad testified that he saw Defendant hit Ms. Garcia once.  When asked to describe what he observed, Brad said that he heard Defendant say to Ms. Garcia, "shut up, cunt," in front of their son.  In response, Ms. Garcia started to scream and said to Defendant, "you can't call me that."  Defendant then hit Ms. Garcia in the face when she was located in an area of the restaurant near the bathroom.  Brad testified that he saw bruises on the left side of Ms. Garcia's nose.  Additionally, Brad testified that he observed Defendant give money to two Cuban men, inside the restaurant, in exchange for a clear bag containing a white substance.  Brad then saw Defendant use a key to scoop the substance and snort it into his nostril.  Brad also testified that he has observed Defendant's oldest son sell marijuana to another busboy at the restaurant and Defendant's oldest son also asked Brad whether he wanted to buy marijuana.

Brad admitted that he has a conviction for habitual driving with a suspended license, a felony.  On cross-examination, Brad also admitted that, six months prior, he had a similar incident at another restaurant.  After being let go from this other restaurant, he went to the police and reported that he had been "manhandled."

The Court then heard testimony from Willie Mora.  Mr. Mora testified that he worked at Manalapan Pizza as a cook for approximately six months and was working at the restaurant on

---

[5] At this point during the June 2, 2014 final hearing, the Court admitted Government's Exhibits 7-19, which are a series of images depicting Brad's chest and the injuries allegedly inflicted by Defendant.

March 17, 2014.  Mr. Mora testified that he worked with Defendant; Defendant was the head chef at Manalapan Pizza, and Mr. Mora was in charge of the kitchen.  Mr. Mora explained that Defendant would sometimes raise his voice at other employees, but Mr. Mora attributed this to the fact that it was loud in the restaurant and working in that industry can create stress and pressure.  Mr. Mora testified that he did not hear Defendant use vulgarities towards anyone, but that sometimes Defendant would swear in the kitchen.  However, Mr. Mora stated that this type of behavior is normal given the fast-paced, stressful nature of working in a kitchen.  Mr. Mora testified that he never witnessed any physical altercations between Defendant and Brad, although Defendant did, at times, raise his voice to reprimand other employees, including Brad. According to Mr. Mora, he, Brad, Monica, Defendant, and Mrs. Peterson all worked at Manalapan Pizza on March 17, 2014.  At approximately 9:00 p.m. on March 17, Mr. Mora made a sandwich and when Brad came to the kitchen to get it, he explained that the owner, Mr. Bass, had given him permission to get the sandwich.  Defendant said that Brad was not allowed to eat and had to wait until later on in the night, and Defendant placed the sandwich on the counter.[6] Mr. Mora testified that he did not hear Defendant use any vulgarity towards Brad.  According to Mr. Mora, later on in the evening, although Brad was supposed to be performing tasks to help close the restaurant, Defendant could not locate him for approximately 50 minutes.  Defendant spotted Brad speaking with Landon, the owner's son.  Defendant and Brad then began talking; although Mr. Mora saw Brad using hand gestures, he could not hear the conversation.  According to Mr. Mora, Brad then left the building and he never saw him again.  Brad never mentioned to Mr. Mora that Defendant had attacked him.  Defendant then came back to the restaurant and said that he had fired Brad.  Mr. Mora stated that he was not in the area where the alleged physical

---

[6] Mr. Mora testified that it was a rule at Manalapan Pizza that employees could only eat before 4:00 p.m. or after 9:00 p.m.

confrontation between Brad and Defendant took place, that Mr. Mora could not see that area from where he was within the restaurant, and Mr. Mora stated that he has no idea what transpired between the two.

Mr. Mora testified that he was not aware that customers made complaints about Defendant's behavior, and said that Defendant only ever refused to work with one employee. Mr. Mora said that he was not present during the alleged domestic violence incident involving Monica Garcia, and that he heard "some comments" from perhaps three or four female employees who quit working at Manalapan Pizza due to Defendant's behavior. Mr. Mora said that he never saw marijuana at the restaurant.

## Analysis

Pursuant to section 784.03, Florida Statutes, "[t]he offense of battery occurs when a person: [a]ctually and intentionally touches or strikes another person against the will of the other; or [i]ntentionally causes bodily harm to another person." § 784.03(1)(a), Fla. Stat. (2013). Pursuant to section 784.021, Florida Statutes, "[a]n 'aggravated assault' is an assault: [w]ith a deadly weapon without an intent to kill; or [w]ith an intent to commit a felony." § 784.021(1).

The Court finds that the Government has shown, by a preponderance of the evidence, that Defendant committed Violations 1, 2, 4, and 5 as alleged in the Petition. The testimony of Officer Parks and Officer Filippelli, the observations of independent witnesses, and the admissions made by Defendant to his probation officer, Ms. Deneve, support the Government's contention that Defendant committed the domestic battery against Ms. Garcia.[7]   The evidence

---

[7] The Government presented this evidence at the May 2, 2014 preliminary hearing. During the May 2, 2014 preliminary hearing, Ms. Deneve testified that Defendant called her on March 24, 2014 and said that he had grabbed Ms. Garcia and also admitted to having an anger problem. Moreover, the arriving police officer saw Defendant chasing his wife through the parking lot. At the June 2, 2014 preliminary hearing, the testimony of Ms. Peterson discussed the aggressive

showed that Defendant grabbed Ms. Garcia and chased her through the parking lot; if not for the arrival of an alert police officer who saw the Defendant chasing Ms. Garcia through the parking lot and intervened, the situation could have become much more serious.   Additionally, the evidence showed that Defendant used derogatory language towards Ms. Garcia, and left her with marks and bruises during the course of their relationship. Violation number 1, which alleges domestic battery by Defendant upon his girlfriend/fiancée Ms. Monica Garcia, has been proven by a preponderance of the evidence.

As to Violations 2 and 3, the Court finds Brad Estremera to be a credible witness, and finds that Defendant did commit the battery against Brad as alleged in Violation 2 of the Petition. Although Brad testified that he did not report the incident until after he learned that he could no longer work at Manalapan Pizza, Brad also testified that his decision to do so was not retaliatory in nature—he explained that he had a newborn child and needed the job at Manalapan Pizza "desperately," and that he would not have reported Defendant's actions if he had been allowed to continue working at the restaurant.   Essentially, Brad reported the incident to police because he felt as though he had "nothing to lose," considering he would no longer be working at the restaurant.   Although Brad also reported another fellow employee at another restaurant where he previously worked after being terminated, the Court believes the testimony Brad offered at the June 2, 2014 final hearing, and finds him credible, especially when his testimony is considered in light of other witnesses' accounts of Defendant's violent, explosive, and mercurial behavior. During his testimony, Brad was fervent and provided a detailed account of his altercation with Defendant.   The Court has considered the fact that Brad is a convicted felon, but that sole conviction is for a suspended license offense and such conviction does negatively affect his

---

conduct of Defendant and the testimony of Brad Estremera established that Defendant grabbed Ms. Garcia on March 14, 2014, and struck her on another occasion.

credibility or truthfulness. Although there were no other witnesses as to what occurred on March 18, 2014 between Brad and Defendant, Brad's testimony is consistent with, and was corroborated by, Defendant's aggressive, threatening, and demeaning words and actions against others and his attacks on Ms. Garcia. Although Mr. Mora testified that Defendant's temper never escalated beyond that of a typical kitchen employee working in the restaurant industry, the Court also got the impression from Mr. Mora that he is the type of employee who "kept his head down," so to speak, and perhaps made a deliberate effort to turn a blind eye to any sort of inappropriate or illegal behavior that occurred at the restaurant. Although Mr. Mora could not corroborate Brad's account, he could not contradict it, either. Additionally, the Court finds that Mr. Mora's credibility is somewhat lacking in that his testimony seemed at times evasive and he seemed to be trying to avoid hurting Defendant. Further, Mr. Mora's testimony is inconsistent with all of the other witnesses who testified at both the preliminary hearing and the final hearing and who portrayed Defendant in an aggressive, threatening, and violent light. When taking the testimony and evidence offered as a whole, the Court finds that the Government has proven, by a preponderance of the evidence, that Defendant committed the battery against Brad, as alleged in the allegation 2 of the Petition.

However, as to alleged violation 3, the Court does not find that the Government has shown, by a preponderance of the evidence, that Defendant committed an aggravated assault against Brad. The Court finds that the evidence was insufficient to establish that the "small dessert fork" Defendant allegedly pressed into Brad's chest constitutes a "deadly weapon" under section 784.021. Although there is sufficient evidence to establish by a preponderance of the evidence that a battery was committed by Defendant upon Brad as alleged in violation 2, there was insufficient evidence to establish that Defendant committed an aggravated assault upon

Brad.  Neither the fork nor photos of it were introduced into evidence and the photos of the alleged injuries and marks to the shirt do not establish that an aggravated assault occurred.  In light of the evidence and testimony presented, the Court cannot find that an aggravated assault occurred.

As to allegations 4 and 5, the testimony of Probation Officer Deneve during the May 2, 2014 preliminary hearing demonstrates that Defendant has engaged in abusive behavior towards a United States Probation Officer and has engaged in a pattern of delaying and missing drug testing.  The testimony establishes, by a preponderance of the evidence, that Defendant failed to submit to drug testing as ordered, as alleged in allegations 4 and 5 of the Petition.  Moreover, the testimony at the final hearing established that Defendant bought and used drugs at the restaurant, which provides the Defendant with a strong motive to avoid and delay drug testing.  At one point, the Defendant provided his probation officer with a cold urine sample, indicative of deception.  At other times, the Defendant rudely refused or delayed drug testing.  The Court also takes note of Probation Officer Deneve's testimony that at one point she approached Defendant and Defendant's behavior towards her made her somewhat fearful and she would have been even more concerned if she had not been accompanied on that occasion by an armed, male Probation Officer.  It seems clear to the Court that Defendant used and purchased drugs while on supervised release and then, to avoid detection, Defendant delayed or failed to attend drug testing as required by the terms of his supervised release and as ordered by the United States Probation Office.  For these reasons and those evident in the record, the Government has proven by a preponderance of the evidence that Defendant committed violations 4 and 5 as alleged in the Petition.

Thus, the Court **RECOMMENDS** that the District Judge find Defendant guilty of

Violations 1, 2, 4, and 5 as alleged in the Petition as they have each been proven by a preponderance of the evidence. The Court also **RECCOMENDS** that the District Judge dismiss Violation 3 as that allegation has not been proven by a preponderance of the evidence.

The Court also suggests that this matter be set down for Sentencing before the Honorable Daniel T.K. Hurley, Senior United States District Judge.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Daniel T.K. Hurley, within fourteen (14) days after being served with a copy. *See* 28 U.S.C. 636(b)(1).

**DONE** and **SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 23rd day of June, 2014.

William Matthewman

WILLIAM MATTHEWMAN
United States Magistrate Judge

12